IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

GIOVANNI LEYVA,

        Plaintiff,

v.

JOHN R. BALDWIN,
DANIEL Q. SULLIVAN,
WEXFORD HEALTH SERVICES, and
JOHN/JANE DOES,

        Defendants.

Case No. 20-cv-00060-SPM

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

    Plaintiff Giovanni Leyva brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights that occurred while incarcerated at Big Muddy Correctional Center ("Big Muddy"). Leyva claims that because there was not a proper policy implemented to facilitate the usage of the telephones by inmates and there was a lack of oversight of staff, he was injured during a fight involving several inmates over the use of the telephones. He seeks monetary damages.

    The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A.[1] Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of a *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

---

[1] At the time of filing, Leyva was incarcerated, and thus subject to the Prison Litigation Reform Act, 42 U..S.C. § 1997e. *See* 28 U.S.C. §1915A(c).

### THE COMPLAINT

Leyva alleges the following: At Big Muddy it is difficult for inmates to access the telephones because of the high demand. (Doc. 1, p. 14). The difficulties only increased when the phone rates were reduced, causing an influx of inmates who could now afford to use the telephones due to the decrease in cost. (*Id.* at p. 15). Because of telephone scheduling difficulties and limited availability, violence between inmates increased. (*Id.* at p. 15). On May 12, 2018, at approximately 8:00 p.m., a fight broke out between eleven inmates in the dayroom of C wing, located in 3 house, over the use of telephones. (*Id.* at p. 13). There were no correctional officers present in the wing or paying attention to the fight, which lasted five to fifteen minutes. Since staff was not present to intervene in the fight, Leyva had to defend himself. He was knocked unconscious and suffered a seizure. At some point, inmates took him into another room to recover. (*Id.*).

Four days following the fight, Leyva was examined by Internal Affairs and sent to the medical unit. In the medical unit, medical staff did not stitch his left eyebrow, which had split open.

A disciplinary report was issued to Leyva for his involvement in the fight, and he was sanctioned by the Adjustment Committee. (Doc. 1, p. 14). The report was based solely on the credibility of convicted offenders, as there were no correctional staff present to witness what occurred during the fight. The disciplinary report was filed to cover up the fact the Defendants were not doing their job. Because of the sanctions, Leyva was deprived of good-time credits, and his parole date was modified. (*Id.* at p. 14).

### DISCUSSION

Based on the allegations of the Complaint, the Court finds it convenient to designate the following Counts:

**Count 1:**   Eighth Amendment claim against Baldwin and Sullivan for

>            deliberate indifference to the violence caused by the increase usage of the telephones resulting in Leyva becoming injured during a fight on May 12, 2018.
>
> **Count 2:** Eighth Amendment failure to protect claim against Correctional Officers John and Jane Does for deliberate indifference to the violence caused by the increase usage of telephones resulting in Leyva becoming injured during a fight on May 12, 2018.
>
> **Count 3:** Fourteenth Amendment claim against Sullivan for the revocation of his good-time credits without due process.
>
> **Count 4:** Eighth Amendment deliberate indifference claim against Wexford Health Services for the provision of inadequate medical care to Leyva's injuries by medical staff.
>
> **Count 5:** Conspiracy claim against Wexford Health Sources for conspiring with correctional staff to violate Leyva's Eighth Amendment rights.
>
> **Count 6:** First Amendment claim of retaliation against Big Muddy and Sullivan for breaking Leyva's television and MP3 player.
>
> **Count 7:** Negligence and *respondeat superior* claim in violation of Illinois state law against Sullivan and Baldwin.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.[2]**

### Counts 1 and 2

Counts 1 and 2 arise out of the Eighth Amendment, which prohibits the cruel and unusual punishment of incarcerated persons. U.S. CONST., amend. VIII. The Supreme Court has long held that "prison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal citations omitted); *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). To state a claim, a plaintiff must allege that he was

---

[2] *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

incarcerated under conditions posing a substantial risk of serious harm and that the defendants acted with "deliberate indifference" to that danger. *Farmer*, 511 U.S. at 834; *Pinkston*, 440 F.3d at 889.

Here, the facts pled in the Complaint fail to sufficiently allege that Leyva was at risk from a "tangible threat to his safety or well-being." *Wilson v. Ryker,* 451 F. App'x 588, 590 (7th Cir. 2011) (finding that allegations that a prison policy of celling together inmates of different races and gang affiliations placed the plaintiff's life in danger insufficient to state a claim). Leyva states that violence increased at Big Muddy after the phone rates were reduced, and the facility had "become notorious for fights breaking out over the use of the institutional phones." (Doc. 1, pp. 14-15, 18). Although violence between inmates had increased at Big Muddy, Leyva's "allegations do not suggest that he was almost certain or very likely to suffer serious harm." *Wilson,* 451 F. App'x at 589. (internal quotations omitted). He has claimed no more than exposure to a generalized risk, and "a general risk of violence is not enough, for prisons are inherently dangerous places." *Id. See also Brown v. Budz,* 398 F. 3d 904, 911 (7th Cir. 2005) ("a plaintiff must allege not only that he or she experienced, or was exposed to, a serious harm, but also that there was a substantial risk beforehand that that serious harm might actually occur."). Therefore, Counts 1 and 2 are dismissed.

**Count 3**

Leyva claims that Warden Sullivan determines the outcomes of disciplinary proceedings, without the authority to do so. (Doc. 1, p. 16). Following the fight on May 12, 2018, he was written a disciplinary report, based solely "the credibility of convicted offenders." (*Id.* at p.14). Leyva was then sanctioned by the Adjustment Committee with revocation of his good-time credits, a punishment that had been predetermined by Warden Sullivan. As a result, his release and parole dates were modified, violating his due process rights.

A loss of good-time credits implicates a liberty interest, and Leyva's claims that his sanctions were predetermined suggest that the disciplinary decision issued by the Adjustment Committee was not supported by "some evidence," as is required to satisfy due process under the Fourteenth Amendment. *See Jones v. Cross*, 637 F.3d 841, 845 (7th Cir. 2011). Leyva's claim challenging the loss of his good-time credits due to an unconstitutional proceeding is not, however, cognizable under Section 1983 at this time. The Supreme Court held in *Heck v. Humphrey* that a Section 1983 claim for damages that "would necessarily imply the invalidity of [a plaintiff's] conviction or sentence" is not an actionable claim until that conviction or sentence has been invalidated. 512 U.S. 477, 487 (1994). A few years later, this decision was expanded to judgments in prison disciplinary proceedings affecting the length an inmate's sentence. *Edwards v. Balisok,* 520 U.S. 641 (1997). *See also Savory v. Cannon,* 947 F. 3d 409 (7th Cir. 2020) (holding that *"Heck* controls the outcome where a section 1983 claim implies the invalidity of the conviction or the sentence, regardless of the availability of habeas relief"). Because the Complaint contains no indication that the disciplinary action has been overturned, Leyva is barred from bringing a claim for monetary damages against Warden Sullivan, and Count 3 is dismissed without prejudice. *See Heck,* 512 U.S. at 486-87.

**Count 4**

Leyva states that Wexford Health Services are being sued "in place of the medical staff" for not sewing or stitching the deep gash above his left eyebrow and disregarding his injuries and pain. (Doc. 1, p. 18-19). Because the doctrine of *respondeat superior* does not apply to actions filed under Section 1983, his claim against Wexford for the actions or inactions of its employees fails. *Jackson v. Ill. Medi–Car, Inc*., 300 F.3d 760, 766 (7th Cir. 2002) ("a private corporation is not vicariously liable under Section 1983 for its employees' deprivations of others' civil rights."). Count 4 is dismissed.

### Count 5

"To state a conspiracy claim under § 1983, [Leyva] needed to allege that 1) state officials and private individuals reached an understanding to deprive him of his constitutional rights, and 2) those individuals were willful participants in joint activity with the state or its agents." *Evers v. Reak,* 21 F. App'x 447, 450 (7th Cir. 2020). The Complaint must include enough facts to suggest that "the defendants reached a meeting of the minds[,]" specifically, the "what, when, why, and how of the defendants' supposed agreement to deprive him of his constitutional rights." *Id.* (internal quotations omitted).

Leyva claims that the medical staff employed by Wexford Health Services and correctional staff conspired to "cover up and or down play the severity of [his] injuries . . . in an effort to try to cover up the reckless and gross execution of duties by the correctional staff at BMR." (Doc. 1, p. 19). This vague and conclusory allegation is not sufficient to state a conspiracy claim, and Count 5 is dismissed.

### Count 6

To successfully plead a retaliation claim, Leyva must allege that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the defendant's decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)) (other citations omitted).

Leyva states that Big Muddy maintained a policy of retaliating against inmates by breaking expensive electronics, which was condoned by Warden Sullivan. (Doc. 1, p. 15-16). Leyva's was targeted twice, and staff broke his television and spilled detergent on his MP3 player. These allegations fail to state a claim for retaliation because Leyva has not stated that any protected First

Amendment activity was the basis for the retaliation. Additionally, Big Muddy is not named as a defendant in the case caption, and even if it were, a correctional center is not a "person" subject to suit for money damages under Section 1983. *See Thomas v. Illinois,* 697 F.3d 612, 613 (7th Cir. 2012) (holding the state and state agencies are not subject to suit under Section 1983 for money damages). Therefore, Count 6 is dismissed.

## Count 7

Because Leyva's constitutional claims under Section 1983 (Counts 1-6) do not survive preliminary review, the Court declines to exercise supplemental jurisdiction over his state law claims, and Count 7 is dismissed without prejduice. *See* U.S.C. § 1367(c)(3) (court may decline supplemental jurisdiction over claim if it has "dismissed all claims over which it has original jurisdiction").

## DISPOSITION

For the reasons stated above, **Counts 1-6** are dismissed for failure to state a claim, and **Count 7** is dismissed for lack of jurisdiction. Therefore, the Complaint does not survive preliminary review pursuant to Section 1915A and is **DISMISSED without prejudice**.

Leyva is **GRANTED** leave to file a "First Amended Complaint" on or before **January 4, 2021**. Should Leyva fail to file a First Amended Complaint within the allotted time or consistent with the instructions set forth in this Order, the entire case shall be dismissed with prejudice for failure to comply with a court order and/or for failure to prosecute his claims. FED. R. CIV. P. 41(b); *Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915(e)(2). The dismissal shall also count as one of Leyva's three allotted "strikes" under 28 U.S.C. § 1915(g).

It is strongly recommended that Leyva use the civil rights complaint form designed for use in this District. He should label the form, "First Amended Complaint," and he should use the case

number for this action (No. 20-cv-00060-SPM). To enable Leyva to comply with this Order, the **CLERK** is **DIRECTED** to mail him a blank civil rights complaint form.

An amended complaint generally supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n. 1 (7th Cir. 2004). The First Amended Complaint must stand on its own without reference to any previous pleading. Leyva must re-file any exhibits he wishes the Court to consider. The First Amended Complaint is also subject to review pursuant to 28 U.S.C. § 1915A.

Leyva is further **ADVISED** that his obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee remains due and payable, regardless of whether he files a First Amended Complaint. 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

Finally, Leyva is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED:   December 7, 2020**

                                        *s/Stephen P. McGlynn*
                                       **STEPHEN P. MCGLYNN**
                                       **United States District Judge**